# EXHIBIT  B

107

1    we have not had a full opportunity to explore.

2              THE COURT:  Because you're going to -- for

3    example, as to the Work for Hire agreement you're

4    going to put a document request out on

5    Mr. Zuckerberg for a copy of that contract, is that

6    it?

7              MR. BOLAND:  We think Mr. Zuckerberg needs

8    to come forward with the copy of the contract he

9    has or --

10             THE COURT:  He said he doesn't have any

11   such contract under oath.

12             MR. BOLAND:  He said he never --

13             THE COURT:  Because he never signed such a

14   thing.

15             MR. BOLAND:  If you read his declaration,

16   your Honor, he says I never signed an agreement

17   involving Facebook.  We want him to be deposed and

18   explain what -- through discovery, did he sign the

19   two-page document that is the authentic contract?

20   Hand it to him with gloves on and ask him to say.

21   He's never said that.  They made a representation

22   in their motion that he did.  If you look at the

23   reference, it's Mr. Snyder saying that he, you

24   know, did or did not or we're not sure.

25   Mr. Zuckerberg has to come in and say I didn't sign

1    it.  So far -- and I'm talking about the specific

2    document that my client's alleging is the actual

3    contract.

4              THE COURT:  Somehow I recall a declaration

5    to the effect that what you purport -- what

6    plaintiff purports is the actual contract, i.e. the

7    Work for Hire contract was never signed by

8    Mr. Zuckerberg.  I don't know why I'm recalling

9    that.

10             MR. SNYDER:  You're correct, your Honor.

11             MR. BOLAND:  My recollection of the

12   declaration --

13             THE COURT:  At my age, who knows.  It's

14   possible that I'm not as sharp as I should be.

15             MR. BOLAND:  A clearer declaration would

16   be an exhibit during a deposition where he is

17   handed with gloves on the actual two-page document

18   and says once and for all, I did not sign that

19   page 2.  That's not -- that is not the contract I

20   signed.  He has not done that yet.  In fact, he has

21   not even said that the -- under oath, that the

22   document attached to the Kole email is the contract

23   that he signed.  They have offered no experts, no

24   experts to declare that that document is the

25   authentic document.  That's an important omission

1          (Off the record discussion.)

2          MR. BOLAND:  Your Honor, there's one other

3     expert we've had review Stroz Friedberg's report,

4     not in total, but have gone over it to try to find

5     some of the conclusions, that's Silent is the name

6     of the company that's already been involved in this

7     case.  They have imaged some media a long time ago.

8     And then there's one other expert we haven't yet

9     disclosed.  It's purely a consulting expert that

10    has evaluated it.  So we will be disclosing them at

11    some point if we intend to use them.

12        But my point is, your Honor, that's just the

13    experts.  There's more in this motion than just

14    experts.  You just pointed out when did Facebook

15    start?  Mr. Zuckerberg has never declared what

16    document he signed or didn't sign under oath.  Is

17    it the StreetFax digital image that he signed, and

18    is he going to declare that he didn't sign the

19    contract that he has with my client?  He has now

20    put that that issue --

21          THE COURT:  If that is -- if there's a

22    hiatus or a lacuna in the record regarding Mr.

23    Mr. Zuckerberg's personal knowledge of when the

24    Facebook website became operational, that can be

25    easily cured by a supplemental declaration.  We

1     don't need a deposition, do we?

2                MR. BOLAND:  Yes, we do --

3                THE COURT:  Why?

4                MR. BOLAND:  -- because we have a right to

5     get all these things under oath, not only these

6     issues here --

7                THE COURT:  Well, if it comes in a

8     declaration under oath, what's wrong -- that's a

9     simple fact, isn't it?

10               MR. BOLAND:  That is, your Honor.  But

11    there's wider facts than that.  They have based

12    their motion to dismiss --

13               THE COURT:  That's one thing, we don't

14    need to depose Zuckerberg on that issue.

15               MR. BOLAND:  We don't, but there's no need

16    to get a declaration from him on it either, because

17    there's a ton of stuff that he has to be deposed

18    on.  The emails to begin with.  Where are all the

19    computers he used in 2003 and 2004?  They've made

20    claims that these emails between him and my client

21    don't exist.  Mr. Zuckerberg needs to declare what

22    computers he used during that time to interact with

23    the Harvard server.  And we have to analyze the

24    Harvard server to determine if that's even true.

25               THE COURT:  Excuse me, how could that

1    provided any authority that says so.

2              MR. BOLAND:  In the brief that we provided

3    had every federal case which has dealt with

4    Rule 1008, and they all clearly say -- they don't

5    qualify it.  They don't say, well, if you challenge

6    it with a lot of experts, now the judge can step

7    in.  It doesn't say that.  They want you to extend

8    it to that.  They want you to extend it to 1008

9    means, if you challenge the authenticity but with a

10   really big stack of paper, now the judge can take

11   it out of the jury's hands.  That's the case law --

12   that's the order they want you to write.  That's

13   the law they want you to establish.

14             THE COURT:  Well, I mean it is a clear and

15   convincing standard that we have to apply, correct?

16             MR. BOLAND:  It is, and we are entitled,

17   in fairness, to rebut the clear and convincing

18   standard with as wide a discovery as necessary to

19   go at every issue they raised.  That's why deposing

20   Mr. Zuckerberg is critical.  He has to say under

21   oath answers to all this.  Again, imagine he says

22   under oath, here's the date and time Facebook went

23   live.  But his computers held by Parmet say no, no,

24   it went live two weeks earlier.  That's a

25   credibility issue which we wouldn't want the Court

1    to rely on some news report as opposed to the

2    comparison of an individual who has admitted

3    committing forgeries and frauds himself,

4    Zuckerberg, with regard to this company and its

5    business records under oath.  That's the person

6    we're talking about.

7         And so it is not defamatory for me to say I'm a

8    little concerned that Mr. Zuckerberg's statement

9    about when he started Facebook might not be

10   accurate perhaps from his memory or perhaps for

11   some other reason, but the computers will tell us

12   everything that was going on then.  Does he have

13   emails there?  Computers will tell us.  When did

14   Facebook go live?  The computers will tell us.

15             THE COURT:  You're talking about the

16   computers in the other -- in the Boston lawsuit

17   that you didn't know about before.

18             MR. BOLAND:  Yes, sir, because they're

19   arguing --

20             THE COURT:  I understand.

21             MR. BOLAND:  -- the emails that my client

22   sent in both '03 couldn't have been sent.  Well,

23   we'll know for sure once we look there now we,

24   won't we?  We'll have a better clue.

25             THE COURT:  You'll want those downloaded

1    challenge it, but we should be entitled to a

2    dismissal on that basis, even though we've ruined

3    the document for you to rebut us.

4        And that's something else that we'll bring up

5    in our response after our reasonable period of

6    discovery is that there's a fairness issue with us

7    being able to rebut certain things they argue

8    because they damaged the key evidence in the case.

9        If you have no further questions, your Honor,

10    that's all I had to say.

11            THE COURT:  Thank you.  Well, I think

12    we're going to -- did you want to respond to that,

13    Mr. Snyder, briefly?  Anything?

14            MR. SNYDER:  I have nothing further to

15    say, your Honor.

16            THE COURT:  Okay.  We're going to grant

17    the motion in part and deny it in part.  We're

18    going to stay general discovery, but permit a

19    limited period of expert discovery for the

20    plaintiff and the defendants.

21        I'll give the plaintiffs 60 days to depose

22    defendants' experts to prepare an opposition to the

23    motion to dismiss.  And then how much time after

24    that would you need to file your written response,

25    including your reports?

184

1          MR. BOLAND:  Your Honor, 60 days.

2          THE COURT:  Sixty days?

3          MR. BOLAND:  Yes.

4          MR. SNYDER:  My question is, your Honor --

5     and we put this in our papers.  We welcome expert

6     depositions.  Certainly we think more in the record

7     the better in terms of our expert reports.  So,

8     what we said in our papers is that if your Honor

9     was inclined to give expert discovery, that we

10    think it's appropriate for them to give us their

11    expert reports presumedly before those depositions

12    so that we have -- that's the normal procedure that

13    you exchange expert reports before depositions so

14    that our experts have an opportunity to read and be

15    prepared to respond to.  Otherwise, they're going

16    to be asked 400 questions at a deposition about

17    technical tests and other things that our experts

18    won't have a chance to study or respond to.

19         So if the goal here is to provide your Honor

20    with the best information, as opposed to some

21    ambush, then the best procedure we believe is that

22    they give us their expert reports responding to our

23    expert reports, they depose our experts, we can

24    depose their experts.  Certainly we should have the

25    opportunity to depose their experts.  And then they