UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**PAUL D. CEGLIA,**

                                        Plaintiff,

        v.

**ERIC HIMPTON HOLDER, JR.,**
as Attorney General of the United States,
**PREETINDER S. BHARARA,**                    Civil Action No.: 1:13-cv-00256 (RJA)
as *US Attorney for the Southern District*
*of New York,* **JANIS M. ECHENBERG**
and **CHRISTOPHER D. FRYE,**
in their capacity as representatives of the U.S.
Attorney's Office for the Southern District of New
York

                                        Defendants.

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

**Counsel and Local Counsel for Plaintiff**
Robert Ross Fogg, Esq.
ROBERT ROSS FOGG, ESQ.
69 Delaware Avenue, Suite 600
Buffalo, New York 14202
Tel: (716) 853-3644  Fax: (716) 852-6782
rrfogg711@roadrunner.com

**Co-Counsel for Plaintiff**
Gil D. Messina
MESSINA LAW FIRM, P.C.
961 Holmdel Road
Holmdel, New Jersey 07733
Tel:  (732) 332-9300  Fax: (732) 332-9301
gmessina@messinalawfirm.com

**Co-Counsel for Plaintiff**
Paul Argentieri, Esq.
PAUL ARGENTIERI & ASSOCIATES
188 Main Street
Hornell, New York 14843
Tel: (607) 324-3232 Fax: (607) 324-6188
paul.argentieri@gmail.com

**Co-Counsel for Plaintiff**
Joseph M. Alioto
*Admitted Pro Hac Vice*
THE ALIOTO LAW FIRM
One Sansone Street, 35th Floor
San Francisco, California 94104
Tel: (415) 434-8900  Fax: (415) 434-9200
jmalioto@aliotolaw.com

**August 30, 2013**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT  PERTAINING TO CONVERSION
OF RULE 12(b)(6) MOTION  TO A RULE 56 MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A. Defendants' Motion to Dismiss Improperly Relies on Matters Outside the
    FAC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.  The FAC States a Claim for Which Relief May Be Granted. . . . . . . . . . . . . . . . . . . . . . . . 4

        i.  Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        ii.  Plaintiff Has Stated a Claim for Injunctive Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        iii.  Defendants Admit that an Injunction May Issue in a Case Such as This. . . . . . . . . 10

        iv.  Defendants Misapprehend Plaintiff's Seventh Amendment Claim. . . . . . . . . . . . . 14

        v.  Defendants' *Bivens* Argument Lacks Merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        vi.  Defendants' Argument that "the First Amendment does not
        protect Ceglia's fraud" Is Irrelevant to Their Motion to Dismiss. . . . . . . . . . . . . . . 15

        vii.   Although Irrelevant to the Motion to Dismiss, it is
        Nonetheless True that the Civil Action is Protected by the First
        Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        viii.   A Recognized Corollary to the First Amendment Right to
        Petition the Courts for Redress is the Immunity Afforded Under the
        *Noerr-Pennington* Doctrine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

Cases

*A.D. Bedell Wholesale Co., Inc. v. Phillip Morris, Inc.*, 263 F.3d 239 (3d Cir. 2001). . . . . . . . . . 20

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988). . . . . . . . . . . . . . . . . . 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*BE&K Constr. Co. v. NLRB*, 536 U.S. 516 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983). . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,*
403 U.S. 388 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15

*Blake v. McClung*, 172 U.S. 239 (1898). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972). . . . . . . . . . . . 16, 19

*California Pharmacy Management v. Zenith Ins.*, 669 F. Supp. 2d 1152
(C.D. Cal., 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ceglia v. Zuckerberg*, case number: 1:10-cv-00569 (W.D.N.Y. 2010). . . . . . . . . . . . . . . . . . . . . 2

*Chambers v. Baltimore & Ohio R. Co.*, 207 U.S. 142 (1907). . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cheminor Drugs Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122 (3d Cir.)
*cert. denied*, 528 U.S. 871 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Christoforu v. U.S.*, 842 F. Supp. 1453 (S.D. Fla. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991). . . . . . . . . . . . . . . . 20

*Cole v. Cunningham*, 133 U.S. 107 (1890). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). . . . . . . . . . . . . . . . . . . . . . . . 5

*Corfield v. Coryell*, 4 Wash. C.C. 371 (Cir. Ct. E.D. Pa. 1823)...........................17

*Curtis & Associates v. Law Offices of Bushman*, 758 F. Supp. 2d 153
(E.D. N.Y., 2010), aff'd by Summary Order, 443 Fed. Appx. 582;
2011 U.S. App. LEXIS 20778 (2d Cir., 2011). .......................................8

*Daddona v. Gaudio*, 156 F. Supp. 2d 153 (D. Conn., 2000). ...........................8

*Dombrowski v. Pfister*, 380 U.S. 479 (1965)......................................11, 12

*Drobny v. JP Morgan Chase Bank, NA*, 2013 U.S. Dist. LEXIS 32051 (N.D. Ill, 2013). ...... 8

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)...............................................................19, 22

*Erickson v. Pardus*, 551 US 89 (2007) ..............................................5

*Hallmark Cards, Inc. v. Monitor Clipper Partners*, 757 F. Supp. 2d 904
(W.D. Mo., 2010)...................................................................8

*Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600 (2003). ..............18

*Juluke v. Hodel*, 811 F.2d 1553 (D.C. Cir. 1987)..................................10, 11

*Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir.,  2010)......................5

*Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*,
257 F. Supp. 2d 819 (M.D. La., 2002). ..............................................7

*Mine Workers v. Pennington*, 381 U.S. 657 (1965)................................19, 22

*Nolan v. Galaxy Scientific Corp.*, 269 F. Supp. 2d 635, 643 (E.D. Pa., 2003). ...............8

*Norton v. United States*, 92 F.2d 753 (9th Cir.1937)..................................9

*Ofori Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir., 2006)...........5

*Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir.1991)...................................9

*PHE, Inc. v. U.S. Dept. of Justice*, 743 F. Supp. 15 (D.D.C. 1990)......................12

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*
508 U.S. 49 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Rendelman v. State*, 927 A.2d 468 (Md. App. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sosa v. DirecTV, Inc.*, 437 F. 3d 923 (9th Cir., 2006).  . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 20, 22

*Talley v. Halpern*,  2005 U.S. Dist. LEXIS 17423 (E.D. Pa., Aug. 16, 2005). . . . . . . . . . . . . . . . . 8

*United States v. Ceglia*, case number 1:12-cr-00876 (S.D.N.Y. 2012).  . . . . . . . . . . . . . . . . . . . . 7

*United States v. Konstantakakos*, 121 F. Appx. 902 (2d Cir. Feb. 11, 2005). . . . . . . . . . . . . . . 18

*United States v. Pendergraft*, 297 F.3d 1198 (11th Cir., 2002). . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Phillip Morris USA*, 566 F.3d 1095 (D.C. Cir. 2009).  . . . . . . . . . . . . . . . . . . . . 19

*United States v. Rowlee*, 899 F.2d 1275 (2d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ward v. Maryland*, 79 U.S. 418 (1871).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Warnock v. State Farm Mut. Auto. Ins. Co.*, 833 F. Supp. 2d 604, 609 (S.D. Miss., 2011). . . . . . 8

*Younger v. Harris*, 401 U.S. 37 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 11, 15

### Constitution

First Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

United States Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 18, 21, 22

### Statutes

18 U.S.C. § 1341. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 10

18 U.S.C. § 1343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10

28 U.S.C. § 1651. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rules

Fed. R. Civ. P. 8(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 19, 22

Fed. R. Civ. P. 12(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

## PRELIMINARY STATEMENT PERTAINING TO CONVERSION OF RULE 12(b)(6) MOTION TO A RULE 56 MOTION

The plaintiff, Paul Ceglia, hereby submits this brief in opposition to defendants' Motion to Dismiss the First Amended Complaint.

As a preliminary matter, as plaintiff argues below, if the Court considers the material submitted to the Court by the defendants that is extraneous to the allegations in the First Amended Complaint, plaintiff respectfully requests that he be notified that the Motion to Dismiss will be treated as one for Summary Judgment under Fed. R. Civ. P. 56 and that he be given an opportunity to take discovery that will permit him to present all the material that is pertinent to the motion, as required by Fed. R. Civ. P. 12(c).

1

## I.  INTRODUCTION

Paul D. Ceglia, plaintiff above named, submits this memorandum of law in opposition to defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

Plaintiff's First Amended Complaint ("FAC") seeks a permanent injunction against the prosecution of a legally baseless criminal action against plaintiff in the Southern District of New York instigated by the defendants, officials of the United States Department of Justice, with the purpose and effect of deliberately and wrongfully interfering with the civil action brought in this Court by plaintiff against Mark Zuckerberg and Facebook, Inc. (the "Civil Action").[1]

By charging plaintiff with wire fraud and mail fraud on the basis of filing and serving pleadings and other papers in the Civil Action, and threatening plaintiff and his attorneys with further criminal prosecution if and when additional filings and service occur in the Civil Action, defendants have acted contrary to well-established law and violated plaintiff's constitutional rights.  The conduct by the government is not only patently illegal under well-established case law and a violation of plaintiff's right to avail himself of his constitutional right to bring his Civil Action in the courts of the United States, but it is also an affront to this Court's jurisdiction.

The defendants have now moved to dismiss the FAC under Fed. R. Civ. P. 12(b)(6) on the ground that the FAC fails to state a claim.  Defendants' motion should be denied because, by defendants' own admissions and arguments in their Memorandum of Law, the FAC states a valid claim and cannot be dismissed.

Defendants argue four points:

---

[1] The Civil Action is *Ceglia v. Zuckerberg, et al.*, No. 1:10-cv-00569 (RJA), pending in the U.S. District Court for the Western District of New York.

(1) that plaintiff supposedly has "an adequate remedy at law," although they admit, "*Younger* [*v. Harris*, 401 U.S. 37, 43-44 (1971)] is not an absolute bar to enjoining a federal criminal proceeding." (Defs. Memo pp. 5, 9);

(2) that because "this is an action against the officials in their individual capacities ... a *Bivens* [*v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)] lawsuit is improper" (Defs. Memo p. 5), while overlooking that the FAC does not seek damages against the defendants in their individual capacities, an essential element of a *Bivens* action;

(3) that "Ceglia's false statements made in his lawsuit against Zuckerberg and Facebook" are not protected from criminal prosecution (Defs. Memo p. 5), despite controlling case law directly to the contrary, which defendants have wholly and conspicuously avoided addressing in their memorandum;[2] and

(4) that plaintiff's Seventh Amendment right to a jury trial has not been infringed because the FAC seeks only injunctive relief in this case (Def. Memo p. 5), although the FAC makes perfectly clear that the threat of future criminal prosecution for litigating the Civil Action has chilled and abridged both plaintiff's Seventh Amendment right to a jury trial and his First Amendment right to petition the Court for relief *in the Civil Action*.

For the reasons stated below, each of these four stated bases for the defendants' motion to dismiss fails as a matter of law.

---

[2] Although it is not pertinent to this opposition, plaintiff does not concede *in any way whatsoever* that any statement or document filed and served by him or his lawyers in his civil action has been in any way false.

## II.  LEGAL ARGUMENT

### A.  Defendants' Motion to Dismiss Improperly Relies on Matters Outside the FAC.

Defendants' motion to dismiss does not comply with Rule 12(b)(6) because it goes well

beyond the allegations in the FAC and includes extraneous matters not alleged in the FAC. The

rule states:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are
> presented to and not excluded by the court, the motion **must** be treated as one for
> summary judgment under Rule 56.  All parties must be given a reasonable
> opportunity to present all the material that is pertinent to the motion.  [Emphasis
> added.]

Here, defense counsel has filed an affidavit in support of the motion to dismiss.  In

addition to containing improper argument, the affidavit states alleged facts that are outside the

allegations of the FAC.  The defendants have also larded their memorandum of law with

references to the Report and Recommendation ("R&R") by the Magistrate in the Civil Action,

which is currently the subject of objection and an appeal to the District Judge.  The R&R is not

final and is irrelevant to both the FAC and the motion to dismiss.[3]  Defendants obviously include

it in an improper effort to prejudice the Court's consideration of the motion to dismiss.  If these

extraneous matters are not disregarded by the Court, the motion must be converted to one for

summary judgment and a discovery schedule entered to allow plaintiff to respond to all such

matters outside the FAC.

### B.  The FAC States a Claim for Which Relief May Be Granted.

### i.  Standard of Review.

When evaluating a motion attacking the sufficiency of claims under Rule 12(b)(6), a

Court applies the plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S.

---

[3] In his objection to the R&R, plaintiff pointed out, *inter alia*, that, by the Magistrate's own
admission, he impermissibly viewed the evidence in the light most favorable to *the moving
parties, the defendants in the Civil Action.*

544 (2007), *Erickson v. Pardus*, 551 US 89 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In those cases, the Supreme Court held that a complaint will survive a motion to dismiss if it

contains sufficient factual matter, accepted as true, to state a claim that is plausible on its face.

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). If a complaint pleads facts that

allow the Court to draw the reasonable inference that a defendant is liable for the misconduct

alleged, it passes muster. *Id*. When deciding a motion to dismiss, the Court must accept all

factual allegations in the complaint as true and construe them in the light most favorable to

plaintiff. *Twombly*, 550 U.S. at 555; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124

(2d Cir., 2010). All reasonable inferences to be drawn from the pleaded facts must be drawn in

favor of the nonmoving party and taken as true. *Ofori Tenkorang v. American Int'l Group, Inc.*,

460 F.3d 296, 298 (2d Cir., 2006). As the Court said in *Erickson v. Pardus*, 551 U.S. at 94,

decided *per curiam* two weeks after *Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. ___, ___, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

The FAC meets these standards.

### ii. Plaintiff Has Stated a Claim for Injunctive Relief.

Defendants' motion wholly fails to address *United States v. Pendergraft*, 297 F.3d 1198

(11th Cir., 2002), which is dispositive of their motion to dismiss.[4] *Pendergraft* undergirds the

---

[4] Defendants' failure to discuss *Pendergraft* is especially egregious and inexcusable in light of prior proceedings with respect to plaintiff's Motion for a Preliminary Injunction, which remains *sub judice* in this Court. In those proceedings, plaintiff made clear that *Pendergraft* is irrefutable controlling authority of the invalidity of the New York criminal prosecution, and hence the appropriateness of injunctive relief here against the criminal case. Defendants have thus long

First and Second Counts of the FAC, so much so that paragraph 47 specifically cites it. *Pendergraft* stands for one or both of the following two dispositive propositions:

(1) One cannot violate the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, where the alleged victim of the fraud does not believe the scheme to defraud. Stated differently, one cannot have the requisite intent to defraud under 18 U.S.C. §§ 1341 and 1343 where one expects or knows that the alleged victim will deny the veracity of the alleged scheme to defraud and cannot be fooled. The principle is self-evident: one cannot expect or intend to deceive someone who knows of the attempted deception.

(2) Litigation activities, including the service and filing of papers and other communications, cannot constitute mail or wire fraud under 18 U.S.C. §§ 1341 and 1343. The rationale for this rule is that extending the mail and wire fraud statutes to such litigation activities would have an impermissibly chilling effect on protected First Amendment rights of petitioning and the right to a jury trial under the Seventh Amendment, and interfere unduly with the workings of the judicial branch and its ability to provide evenhanded justice to litigants.

The essence of the criminal case plaintiff seeks to enjoin is described by defendants at pages 2-3 in their memorandum:

- "The mail and wire fraud allegations in the Indictment include an allegation that Ceglia filed a civil lawsuit against Facebook and Zuckerberg, fraudulently demanding a significant ownership stake in Facebook."

- "The indictment further alleges that Ceglia 'doctored or otherwise fraudulently converted a legitimate contract', 'manufactured evidence, including purported emails', and 'destroyed evidence' all in support of his civil lawsuit."

been on notice of the need to address this decision and its progeny. Their silence in the motion to dismiss speaks volumes about their inability to do so.

As stated, Ceglia categorically denies these allegations. *Nonetheless, even if the allegations were true, they could not possibly give rise to a violation of the wire and mail fraud statutes as a matter of law.* Accordingly, the FAC states a cause of action in the First and Second Counts for an injunction against the criminal prosecution because the defective indictment impermissibly chills plaintiff's right to pursue the Civil Action, in that it wrongfully threatens plaintiff and his lawyers with future prosecution if they file or serve any further papers in the Civil Action.

The indictment in *U.S. v. Ceglia*, case number 1:12-cr-00876, in the Southern District of New York (the "Criminal Case") charges plaintiff with one count of mail fraud in violation of 18 U.S.C. § 1341, and one count of wire fraud in violation of 18 U.S.C. § 1343. Both counts rest on plaintiff's alleged "scheme to defraud Facebook, Inc., and Mark Zuckerberg and to corrupt the federal judicial process." (See FAC Exhibit A (Indictment, pp. 2, 4)). *The truth or falsity of the charges is irrelevant, because the Government cannot prevail in the Criminal Case under any circumstances.*

The problem with the Criminal Case is that the indictment is defective on its face and insufficient to establish either mail or wire fraud under federal law. That is because a party who makes use of falsified material in litigation, which the party understands the other side will know to be falsified, as the Government has alleged, cannot possess the intent necessary to formulate a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses" within the meaning of the federal mail and wire fraud statutes under which plaintiff has been charged, 18 U.S.C. §§ 1341, 1343. *Pendergraft*, 297 F.3d at 1209; *Sosa v. DirecTV, Inc.,* 437 F. 3d 923, 941 (9th Cir., 2006); *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 257 F. Supp. 2d 819, 830-31 (M.D. La., 2002); *California Pharmacy*

*Management v. Zenith Ins.*, 669 F. Supp. 2d 1152, 1161 (C.D. Cal., 2009); *Drobny v. JP Morgan Chase Bank, NA*, 2013 U.S. Dist. LEXIS 32051, *6-7 (N.D. Ill., 2013).[5] Thus, the Criminal Case charges plaintiff with crimes he cannot possibly have committed, as plaintiff specifically alleges in the First Count of the FAC. FAC ¶¶ 30-43.[6]

In *Pendergraft*, the leading case on this issue, the 11th Circuit reversed convictions for mail fraud because "The allegations in the indictment for conspiracy to commit mail fraud and for the substantive offense of mail fraud…fail[ed] to charge offenses as a matter of law." 297 F. 3d at 1209. The Government charged the defendants with mail fraud based on their pursuing litigation in which they made use of an affidavit in which they falsely claimed to have been threatened by the adverse party.

The Court first observed, "A number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility." *Id.* at 1208. The Court noted that "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system." *Id.* Instead of resting its decision on that ground, however, the Eleventh Circuit went to the language of the mail fraud statute itself, 18 U.S.C. § 1341, and determined that it could not reach a situation in which the charged

---

[5] See, also,the following cases holding that the mail and wire fraud statutes cannot apply to litigation activities: *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 161-62 (D. Conn., 2000); *Warnock v. State Farm Mut. Auto. Ins. Co.*, 833 F. Supp. 2d 604, 609 (S.D. Miss., 2011); *Hallmark Cards, Inc. v. Monitor Clipper Partners*, 757 F. Supp. 2d 904, 914-15 (W.D. Mo., 2010); *Nolan v. Galaxy Scientific Corp.*, 269 F. Supp. 2d 635, 643 (E.D. Pa., 2003); *Curtis & Associates v. Law Offices of Bushman*, 758 F. Supp. 2d 153, 174-75 (E.D. N.Y., 2010), *aff'd by Summary Order*, 443 Fed. Appx. 582; 2011 U.S. App. LEXIS 20778 (2d Cir., 2011); *Talley v. Halpern*, 2005 U.S. Dist. LEXIS 17423, *10 (E.D. Pa., 2005).

[6] Of course, the only other possibility is that the documents relied upon by Ceglia in the Civil Action are, as he claims, completely authentic, in which case there would also be no violation of the wire and mail fraud statutes. FAC ¶ 44.

party relied on falsified evidence that the party knew the adverse party would have known to be

false.

> But, as always, we are primarily concerned with the language of the
> statute, not its policy implications. While both the mail-fraud and wire-fraud
> statutes use the phrase "scheme to defraud," neither statute defines what a
> "scheme to defraud" is… Instead, the meaning of "scheme to defraud" has been
> judicially defined… Courts have defined the phrase broadly, allowing it to
> encompass deceptive schemes that do not fit the common-law definition of
> fraud…Nevertheless, Congress did not strip the word "defraud" of all its
> meaning,…; the word still signifies "the deprivation of something of value by
> trick, deceit, chicane, or overreaching." [*Id.* at 1208-09; citations omitted.]

The Court then focused on the facts before it and found them *not* to constitute mail fraud

as a matter of law:

> In support of their suit against Marion County, Pendergraft and Spielvogel
> authored affidavits that falsely accused Cretul of making threats. Such falsity
> might have deceived some, *but it could not deceive Marion County. Cretul, after*
> *all, was the Chairman of the Marion County Board of Commissioners*, and
> Pendergraft and Spielvogel were aware of Cretul's position. *They knew that*
> *Cretul would deny making these threats, and they knew that their affidavits*
> *would not trick Cretul into admitting otherwise. If they knew that they could*
> *not deceive Marion County, then they could not have had an intent to deceive.*
> *See Pelletier v. Zweifel,* 921 F.2d 1465, 1499 (11th Cir.1991) ("A defendant
> cannot possibly intend to deceive someone if he does not believe that his intended
> 'victim' will act on his deception."); *Norton v. United States,* 92 F.2d 753, 755
> (9th Cir.1937) ("*There can be no intent to deceive where it is known to the party*
> *making the representations that no deception can result*.").
> Since there was no intent to deceive, there was no "scheme to defraud,"
> and we hold that Pendergraft and Spielvogel's mailing of litigation documents,
> even perjurious ones, did not violate the mail-fraud statute. [Emphasis added.]

The application of the *Pendergraft* decision to the facts alleged in the FAC could not be

clearer or more dispositive. As in *Pendergraft*, if plaintiff here forged the contract and emails

between himself and Zuckerberg, as the indictment alleges, he necessarily knew that this forged

evidence "could not deceive" Zuckerberg or Facebook, the company of which Zuckerberg was

"the Founder, Chairman, and Chief Executive Officer." Plaintiff knew, as in *Pendergraft*, that

Zuckerberg and Facebook "would deny" the allegedly falsified evidence, and that the allegedly falsified evidence "would not trick" Zuckerberg and Facebook "into admitting otherwise." Hence, as in *Pendergraft*, if plaintiff knew he could not deceive Zuckerberg and Facebook, as he perforce did under the facts stated in the indictment and FAC, plaintiff could not have had "the intent to deceive" required by the mail and wire fraud statutes as a matter of law. Since there could be no intent to deceive Zuckerberg and Facebook, there could be no "scheme to defraud" under §§ 1341 and 1343, and the Criminal Case cannot possibly succeed. That being so, plaintiff has clearly stated a claim that is sufficiently plausible to enjoin the Criminal Case, if not certain to do so.

Rather than attempting to argue for the validity of the indictment by rebutting *Pendergraft*, which defendants know is impossible, they tender the flimsy *non sequitur* that plaintiff fails to state a cause of action for an injunction, because he "has an adequate remedy at law ... to move to dismiss the indictment." Defs. Memo p. 5. ***Here, however, defendants run headlong into a wall of cases holding that persons threatened with meritless criminal prosecutions that have the effect of chilling protected First Amendment rights may bring independent actions to enjoin such prosecutions.***

### iii. Defendants Admit that an Injunction May Issue in a Case Such as This

While arguing that the FAC is defective because plaintiff supposedly has "an adequate remedy at law," defendants make the fatal concession that "[t]he *Juluke* [*v. Hodel*, 811 F.2d 1553 (D.C. Cir. 1987)] and *Christoforu* [*v. U.S.*, 842 F. Supp. 1453 (S.D. Fla. 1994)] holdings stand for the proposition that *Younger* [*v. Harris*, 401 U.S. 37, 43-44 (1971)] is *not* an absolute bar to enjoining a federal criminal proceeding." Defs. Memo p. 9. This concession alone requires rejection of defendants' argument that plaintiff has an adequate remedy at law through a motion to dismiss the indictment in the Criminal Case. The very cases defendants cite allow an

independent action to enjoin a criminal prosecution, because there is no adequate remedy at law

where the threat of a baseless criminal prosecution threatens the exercise of basic constitutional

rights, such as the right of petition under the First Amendment.

In *Juluke v. Hodel*, 811 F.2d at 1553, the Court expressly rebuffed an effort to dismiss an

independent action to enjoin a pending federal criminal prosecution:

> Apparently, the Government is seeking to extend the holding of *Younger v. Harris*[, 401 U.S. 37 (1971)] — that a federal court will not enjoin an ongoing criminal proceeding in state court — to cover the situation in which parallel civil and criminal proceedings take place in federal court. Not only can we find no support for such an extension of *Younger,* but any such extension would be flatly at odds with the prevailing case law.

The Court then directly confronted and summarily rejected the very argument defendants

raise here: that the ability to move to dismiss the criminal indictment provides an adequate

remedy at law requiring dismissal of the independent action for injunctive relief:

> The only conceivable relevance that *Younger* may have to the case before us is its statement concerning general principles of equity jurisprudence: "that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." To the extent that this suggests that the District Court judge in the civil case had discretion to defer action in the proceeding before him pending resolution of the criminal case, the principle is unexceptional. ***It cannot be read, however, to have required the judge to dismiss the civil action merely because of the existence of the criminal proceeding.*** [*Id*. at 1557; emphasis added.]

In *Christoforu v. United States*, 842 F. Supp. at 1458, the court observed, "*Juluke* held

that the *Younger* doctrine *does not require* federal courts to abstain or defer from granting

injunctive relief pending resolution of parallel federal criminal actions implicating the First

Amendment."

The Supreme Court definitively addressed the propriety of enjoining criminal

proceedings threatening First Amendment rights in *Dombrowski v. Pfister*, 380 U.S. 479 (1965).

11

The Supreme Court held an independent injunction action appropriate, and irreparable harm to

be present, because

> …the allegations in this complaint depict a situation in which defense of
> the State's criminal prosecution will not assure adequate vindication of
> constitutional rights. They suggest that a substantial loss or impairment of
> freedoms of expression will occur if appellants must await the state court's
> disposition and ultimate review in this Court of any adverse determination. These
> allegations, if true, clearly show irreparable injury….***The assumption that
> defense of a criminal prosecution will generally assure ample vindication of
> constitutional rights is unfounded in such cases.*** [380 U.S. at 486-87.]

The Court therefore concluded, "It follows that the District Court erred in holding that the

complaint fails to allege sufficient irreparable injury to justify equitable relief." *Id.* at 489.  See,

also, *PHE, Inc. v. U.S. Dept. of Justice*, 743 F. Supp. 15, 21-22 (D.D.C. 1990) ("In *Dombrowski*

*v. Pfister*, … the Supreme Court went beyond *Bantam Books*[*, Inc. v. Sullivan*, 372 U.S. 58

(1963)] to find that federal courts may enjoin not only threats of prosecution, but ***indictments***

***and prosecutions that are calculated to infringe upon First Amendment rights."*** [Emphasis

added.]

The application of these cases to this one could not be clearer.  First, this Court has

jurisdiction to enjoin the Criminal Case; and, second, because the FAC clearly alleges that the

baseless Criminal Case threatens plaintiff's First Amendment petitioning and expression rights in

the Civil Action, the FAC adequately pleads irreparable injury and the absence of an adequate

remedy at law to state a cause of action for injunctive relief.  The FAC specifically recites the

Government's statements in the Criminal Case that not only will plaintiff be subject to criminal

jeopardy if he takes any further action to prosecute the Civil Action, but also his attorneys will be

at risk of indictment if they do what lawyers do every day, which is to file and serve *anything* in

the Civil Action.  FAC ¶¶ 21-23.  The FAC also states that at the hearing on plaintiff's motion

for a preliminary injunction, when defendants' counsel was asked if plaintiff's lawyers would be

at risk of prosecution if they should file anything else in the Civil Action, counsel replied that she did not know "what the Defendants were doing in the Southern District." FAC ¶ 51.[7] This Court must therefore reject defendants' argument that the FAC fails to allege irreparable injury in that plaintiff has an adequate remedy at law.

It is also time to put to rest the canard defendants perpetually raise that this Court is being asked to interfere with proceedings in another federal court. *To the contrary, it is defendants that have sought and continue to seek to interfere with proceedings in this Court*. It is *this Court* in which the first case was filed: the Civil Action brought by plaintiff against Mark Zuckerberg and Facebook. Only *after* the filing of the Civil Action in *this Court* did defendants commence the Criminal Case in the Southern District of New York, rather than in *this Court*, asserting not only that plaintiff's filing and prosecution of the Civil Action in *this Court* violated the wire and mail fraud statutes, but also that any further filings and service in *this Court* by plaintiff and his counsel would constitute additional criminal violations of those statutes. One can well ask who is interfering with whom, although the question answers itself. This Court has every right to take umbrage at the Government's patently improper interference with the Civil Action pending in this Court, as well as the Government's ham-handed attempt to throw its full weight behind defendants to help them achieve a favorable outcome and deny plaintiff his day in court.

---

[7] The basis for the indictment is the pendency of the Civil Action and the allegations made by plaintiff in it. FAC ¶ 31. The indictment is based solely "upon interviews the complainant ... had with Facebook, Inc.'s CEO, Mark Zuckerberg. FAC ¶¶ 34-36. The prosecutors and Facebook's and Zuckerberg's lawyers in the Civil Action have a preexisting professional relationship and the "aligned legal representation is a conflict of interest requiring disqualification." FAC ¶ 26. The defendants' actions "have chilled, are chilling, and are *intended* to chill Plaintiff's constitutional right" to access the courts and have a jury trial against Facebook and Zuckerberg under the Seventh Amendment. FAC ¶ 52 (emphasis added). "The actions of the Defendants amount to an *improper and deliberate attempt to obstruct the pursuit of the Civil Action in the Western District of New York.*" FAC ¶ 54 (emphasis added).

In order to forestall this abuse of executive power by defendants, the gravamen of the Third and Fourth Counts of the FAC invokes the authority of this Court under 28 U.S.C. § 1651 to issue "all writs necessary or appropriate in aid of [its] ... jurisdiction[] and agreeable to the usages and principles of law." FAC ¶ 61. The inherent and statutory authority of the Court to protect its jurisdiction by vindicating plaintiff's right to proceed with the Civil Action free of the threat of criminal prosecution is not addressed by the Government in its memorandum of law and is, therefore, taken as conceded.

### iv.  Defendants Misapprehend Plaintiff's Seventh Amendment Claim.

Defendants assert that plaintiff's claim that the Criminal Case violates his Seventh Amendment right to a jury trial is frivolous because the FAC seeks only injunctive relief, which does not entitle plaintiff to a jury. Defs. Memo pp. 14-15. Defendants either profoundly misunderstand plaintiff's claim, or willfully misrepresent it.

It is unambiguous from the FAC that plaintiff does *not* claim his right to a jury trial is impeded in *this injunctive action*, but *in the Civil Action*  by reason of his indictment and the explicit threat to prosecute him and his lawyers as they proceed with that action. FAC ¶ 7. Even defendants cannot deny that the Criminal Case is meant to derail the Civil Action through both existing and threatened future prosecution based on plaintiff's assertion of his constitutional right to resort to petition this Court for relief and to obtain a jury trial in doing so.

Nothing further need be said in opposition to this misguided argument by defendants.

### v.  Defendants' *Bivens* Argument Lacks Merit.

Defendants argue that "[a] *Bivens* action cannot be used to challenge a pending criminal prosecution." It is unclear where this argument comes from. This is *not* a *Bivens* action. Defendants recite the elements of a *Bivens* action on page 10 of their memorandum: "Claims for money damages based on constitutional violations by federal officers in their individual

14

capacities are generally cognizable only under the doctrine of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 [] (1971)." Here, plaintiff is not claiming "money damages" and he has not sued the defendants "in their individual capacities," contrary to their assertion.[8]   Rather, the pending Criminal Case and the threatened follow-on prosecutions are so chilling as to obstruct plaintiff and his lawyers from pursuing the Civil Action.  This is a situation where the plaintiff is being irreparably harmed by "injury other than that incidental to every criminal proceeding brought lawfully and in good faith." *Younger v. Harris*, 401 U.S. 37, 48 (1971).  Because this is not a *Bivens* action, a § 1983 action, or a similar action, the cases cited by defendants at page 10 of their memorandum are inapposite, as is their entire *Bivens* argument.

### vi.  Defendants' Argument that "the First Amendment does not protect Ceglia's fraud" Is Irrelevant to Their Motion to Dismiss

Defendants argue that the First Amendment does not protect plaintiff's supposed fraud in filing and pursuing the Civil Action because the Constitution does not protect fraud.  This statement is circular in its reasoning and entirely irrelevant.  It is circular because it assumes the ultimate issue to be decided in the Criminal Case: the invalidity of plaintiff's claims in the Civil Action.  More important, it is irrelevant because the argument has no bearing upon whether the FAC states a claim for which relief can be granted.

---

[8]  The initial complaint did name the defendants individually, but they are named only in their official capacities in the FAC.  Apparently, defendants missed the amendment because they state that "[plaintiff] does state in the caption of the action and in paragraphs 10, 11 and 12 that the defendants are being sued individually." Defs. Memo p. 10.  This is simply incorrect and the FAC no longer contains anything in the caption or the referenced paragraphs to suggest the defendant officials are named in their individual capacities.

As shown, under *Pendergraft* and its progeny, the indictment in the Criminal Case is defective ***even if its allegations are true that plaintiff's Civil Case is fraudulent***,[9] either (1) because one cannot have the requisite intent to commit mail or wire fraud where one knows that the target of the fraud will recognize the falsity of the allegedly fraudulent act or document, or (2) because the mail and wire fraud statutes do not apply to litigation activities. Thus, defendants seek to prosecute plaintiff in a criminal action that is baseless and unlawful, and undeniably chills his First Amendment rights to pursue the Civil Action, even if the allegations of the indictment are true.

Defendant's argument that the First Amendment does not protect fraud is therefore entirely beside the point. If anything, the argument underscores that the proper forum for deciding the truth or falsity of plaintiff's claims is the Civil Action, with which defendants have no business trying to interfere or influence, as they are clearly doing.

### vii.   Although Irrelevant to the Motion to Dismiss, it is Nonetheless True that the Civil Action is Protected by the First Amendment

Defendants argue that the Civil Action is not protected by the First Amendment's guarantee of the right to petition the courts for redress. Defendants' argument is predicated on the erroneous notion that plaintiff has no such right because "the Government is not a party to that litigation." Defs. Memo p. 11. Defendants construe the right to petition far too narrowly.

The Supreme Court has held that "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983) (civil suit to enforce private rights cannot be barred as an unfair labor practice). *See also, California Motor Transport Co. v. Trucking*

---

[9]   Plaintiff of course denies that they are true, in which event defendant's argument that the First Amendment does not protect fraud is also irrelevant.

*Unlimited,* 404 U.S. 508, 510 (1972). For the same reasons the *Pendergraft* court found that

litigation activities cannot serve as a basis to prosecute someone for mail and wire fraud because

doing so would chill resorting to courts to settle disputes. "A civil action is a lawful means for

people to have their private disputes, including financial disputes, decided when they are unable

to decide them on their own." *Rendelman v. State*, 927 A.2d 468, 481 (Md. App. 2007) (finding

that a majority of federal courts protect a threat to sue, even one made in bad faith). The right to

petition is not dependent upon success: "Nor does the text of the First Amendment speak in

terms of successful petitioning – it speaks simply of the 'right of the people ... to petition the

Government for a redress of grievances.'" *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 532

(2002).

In *Chambers v. Baltimore & Ohio R. Co.*, 207 U.S. 142, 149 (1907), a case involving

private parties litigating issues under state law, the Supreme Court held:

> In the decision of the merits of the case there are some fundamental
> principles which are of controlling effect. The right to sue and defend in the
> courts is the alternative of force. In an organized society it is the right
> conservative of all other rights, and lies at the foundation of orderly
> government. It is one of the highest and most essential privileges of
> citizenship, and must be allowed by each State to the citizens of all other States
> to the precise extent that it is allowed to its own citizens. Equality of treatment
> in this respect is not left to depend upon comity between the States, but is
> *granted and protected by the Federal Constitution. Corfield v. Coryell*, 4
> Wash. C.C. 371, 380, per Washington, J.; *Ward v. Maryland*, [79 U.S.] 418,
> 430, per Clifford, J.; Cole v. Cunningham, 133 U.S. 107, 114, per Fuller, C.J.;
> *Blake v. McClung*, 172 U.S. 239, 252, per Harlan, J. [Emphasis added.]

Here, plaintiff's Civil Action was filed in the New York Supreme Court. It was removed

to this Court on diversity grounds by Zuckerberg and Facebook. Plaintiff has the identical right

under the Constitution to pursue his state-based claims in this Court as did the plaintiff in the

*Chambers* case.

The cases cited by defendants in support of their argument that the First Amendment does not protect plaintiff's right to file the Civil Action are completely inapposite. *United States v. Konstantakakos*, 121 F. Appx. 902 (2d Cir. Feb. 11, 2005) had to do with false swearing on a visa application. No one can seriously dispute that false swearing or perjury is not criminal, but that does not affect litigants' rights *inter se* to bring civil actions, which is precisely what *Pendergraft* stands for. Similarly, *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600 (2003) stands for nothing other than the unremarkable notion that one can be sued for fraud because fraud is not protected speech. That case had nothing to do with denying a litigant his right to access the courts to redress grievances.

Similarly, in *United States v. Rowlee*, 899 F.2d 1275 (2nd Cir. 1990), defendants were prosecuted for various crimes related to tax evasion and tax fraud. They were *not* prosecuted for having filed a civil lawsuit as plaintiff has and the case is, therefore, irrelevant. Finally, in *United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003 (*en banc*), defendants were duly convicted of wire and mail fraud essentially for bribing claims adjusters. The offenses did not relate to filing or serving papers in civil litigation. It, too, stands for the self-evident proposition that wire and mail fraud are prosecutable if the acts do not comprise usual litigation activities by a litigant and his lawyers.

Plaintiff's Civil Action is protected by the First Amendment right to petition under the Constitution, despite defendants' unsupported arguments to the contrary.

### viii.  A Recognized Corollary to the First Amendment Right to Petition the Courts for Redress is the Immunity Afforded Under the *Noerr-Pennington* Doctrine

In their brief defendants also argue that plaintiff is not entitled to the immunity afforded him under the *Noerr-Pennington* Doctrine. Although *Noerr-Pennington*, like the Right to

Petition, is not, strictly speaking, relevant to defendants' Rule 12(b)(6) motion for failure to state

a claim, because defendants have raised it as a red herring, plaintiff will address it.

Defendants again rely upon an inapposite case, *United States v. Phillip Morris USA*, 566

F.3d 1095 (D.C. Cir. 2009), in which the defendants there were charged with RICO violations:

> The district court found six alleged acts protected by *Noerr-
> Pennington* and based its holding on the remaining racketeering activity. …
> All six excluded acts were instances of testimony to Congress and, given the
> wealth of unprotected racketeering acts, we need not reach the question
> whether the district court correctly excluded these acts. The remaining acts
> were intended to defraud consumers, so *Noerr-Pennington* protection does not
> apply.

*Id.* at 1124 (citation omitted).

*Phillip Morris* did not involve prosecuting a supposedly fraudulent civil lawsuit and it,

like the rest of defendants' authorities, is fundamentally distinguishable.  In fact, it merely serves

to further point up the potency of the holding in *Pendergraft* that usual litigation activities cannot

be converted into wire and mail fraud crimes without chilling First Amendment rights.

Plaintiff's actions are also protected by *Noerr-Pennington.*

The *Noerr-Pennington* Doctrine derives from two Supreme Court cases:  *Eastern

Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *Mine

Workers v. Pennington*, 381 U.S. 657 (1965).  The doctrine initially held that private entities are

immune from liability under the antitrust laws for attempts to influence the passage or

enforcement of laws, even if the laws would have anticompetitive effects.  *Noerr*, *supra* at 135

and *Pennington, supra* at 670.  Immunity applies to valid petitions to all agencies of government

for redress, whether the claimed injury is caused by the act of petitioning itself or the

government action which results from the act of petitioning.  Immunity attaches even if the

petitioner has an improper purpose or motive.  *See, Noerr, supra; Pennington, supra; California*

*Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972); *A.D. Bedell Wholesale Co., Inc. v. Phillip Morris, Inc.,* 263 F.3d 239 (3d Cir. 2001); *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988); *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 56 (1993); *Cheminor Drugs Ltd. v. Ethyl Corp.,* 168 F.3d 119, 122 (3d Cir.) *cert. denied*, 528 U.S. 871 (1999).

Since the doctrine's inception, it has been expanded beyond the antitrust field and has been found to confer immunity for various other claims.  Although, the doctrine is not without its limits, "[T]he *Noerr-Pennington* doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause." *Sosa v. DirecTV, Inc.*, 437 F.3d 923 (9th Cir.).  "On the other hand, neither the Petition Clause nor the *Noerr-Pennington* Doctrine protects sham petitions, and statutes need not be construed to permit them." *Id.*

The "sham" exception to *Noerr-Pennington* holds that using the petitioning process solely as an anticompetitive tool without legitimately seeking a positive outcome destroys immunity. *See, City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365 (1991). "Under the *Noerr-Pennington*  rule of statutory construction, we must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Id.*

*"PRE II*  recognized the applicability of the first aspect of the breathing space principle when it defined the *Noerr-Pennington* doctrine's 'sham litigation' exception as requiring both objective baselessness and an improper motive." *See Sosa, supra,* citing *Prof'l Real Estate Investors, Inc.* v. *Columbia Pictures Industries, Inc.,* 508 US at 60-61) ("*PRE II*").

Here, the Civil Action does not fall within the narrow confines of objective baselessness so as to be considered "sham litigation." The Civil Action has been ongoing since June 2010, with hundreds of pages of expert reports produced by plaintiff, detailing the scientific tests and analyses performed on the documents in question in order to determine their authenticity. Every charge of fabrication and forgery, relating to the authenticity of the operative documents, made by Facebook and Zuckerberg was countered by plaintiff's world-renowned experts. Those documents are now before the Court on the objection and appeal from the Magistrate's Report and Recommendation and may be judicially noticed. (See, Dueling Expert Table, attached as Exhibit D to plaintiff's submission in support of his motion for a Temporary Restraining Order (Doc. 3)). The Magistrate's Report and Recommendation is not final or binding pending the outcome of the objection and appeal, despite defendants wish that it were so. The Civil Action cannot, by any reasonable standard, be viewed as objectively baseless, given the plethora of evidence supporting plaintiff's claims.

Mindful of its obligation to protect the constitution, the Supreme Court fashioned further safeguards to protect from overzealous prosecutors' allegations that lawsuits are baseless or fraudulent, by defining lawsuits which are not accorded First Amendment protections clearly and narrowly.

> These principles are similarly applicable in the Petition Clause context. *PRE II* recognized the applicability of the first aspect of the breathing space principle when it defined the *Noerr-Pennington* doctrine's "sham litigation" exception as requiring *both* objective baselessness and an improper motive. *PRE II*, 508 U.S. at 60-61. This definition overprotects baseless petitions so as to ensure citizens may enjoy the right of access to the courts without fear of prosecution. *BE&K* made this breathing room protection explicit. Recognizing that under *New York Times* and *Gertz*, false statements are not wholly unprotected by the First Amendment, the Court observed that baseless litigation might also require protection in some circumstances. *BE&K*, 536 U.S. at 531. Accordingly, the Court noted, "we have never held that the entire class of objectively baseless litigation may be enjoined or declared unlawful

even though such suits may advance no First Amendment interests of their
own." *Id.*

*Sosa v. DirecTV,* 437 F.3d 923, 934 (9th Cir. 2006) (emphasis added). *Sosa* is strong

support for the conclusion that *Noerr-Pennington* immunizes plaintiff for bringing the Civil

Action.

Failing to enjoin the prosecution of the Criminal Case, as requested in this case,

would allow any prosecutor to trample a litigant's First Amendment rights and chill his and

his attorneys' pursuit of civil litigation by denying them the immunity guaranteed by the

*Noerr-Pennington* Doctrine.

As the Court observed  in *Pendergraft*, in holding that a claim believed to be fraudulent

by a civil defendant cannot amount to wire fraud or mail fraud as a matter of law, "under our

system, parties are encouraged to resort to courts for the redress of wrongs and the enforcement

of rights." *Pendergraft*, 297 F.3d at 1206.  In addition, "Serving a motion by mail is an ordinary

litigation practice.  A number of courts have considered whether serving litigation documents by

mail can constitute mail fraud, and all have rejected that possibility." *Id.* at 1208.

When *Noerr-Penington* and *Pendergraft* are considered, either jointly or separately, it is

clear that the law requires that defendants be enjoined from prosecuting plaintiff.

Indeed, Defendants should take note of these propositions and henceforth abjure the

tactics they have employed here, which are redolent of authoritarian regimes in which the

Government serves as a tool of the rich and powerful, rather than as the instrumentality of

impartial justice established by the United States Constitution.

### III. CONCLUSION

The FAC states plausible and cognizable claims on which relief can and should be

granted, and defendants' Rule 12(b)(6) motion should be denied.  To the extent the Court resorts

to matters outside the pleadings, as defendants urge, the motion must be treated as one for

summary judgment under Rule 56 and plaintiff afforded a reasonable opportunity for discovery.

Dated:  August 30, 2013                          Respectfully submitted,
        Cape May Point, NJ                       **MESSINA LAW FIRM, P.C.**

                              By:      s/  Gil D. Messina
                                       Gil D. Messina
                                       Attorneys for Plaintiff